HOBSON, Judge.
The appellant, Horace Wingard, was indicted for murder in the first degree. After the jury entered its verdict of guilty, with a recommendation of mercy, the appellant was adjudged guilty and sentenced to imprisonment for life. It is from this judgment and sentence that the appellant appeals.
The appellant contends that the trial court committed reversible error in allowing into evidence certain statements made by him, thereby violating the now famous Miranda decision.
The statements in question were made to an F.B.I. Agent named Lusky who testified as to the circumstances surrounding and prior to the giving of the statements by the appellant. Mr. Lusky’s testimony, as well as that of the appellant, as to his version of the circumstances surrounding the giving of the statements, was heard by the judge prior to admitting the statements into evidence. The testimony of the appellant and that of Mr. Lusky was conflicting.
Mr. Lusky testified that he received information to the effect that a person fitting appellant’s description was staying at a hotel. He learned by showing a photograph of appellant that a person resembling the photograph was staying at the hotel under the name of Dennis Moore. Lusky and three other law enforcement officers remained in the vicinity of the hotel until they observed a person resembling the description and photograph of the appellant, at which time they approached the appellant and asked if he could help resolve the question of the identity of himself. The appellant at that time identified himself as Dennis Moore, and showed papers, driver’s license and *264 draft card, in that name. Mr. Lusky testified that this was not a positive identification, although the man who asserted himself to he Dennis Moore appeared to fit the general description of the appellant and resemble the photograph. At this point, Mr. Lusky asked the appellant if he would accompany them to the Police Department so that they could determine definitely by fingerprints whether or not he was Horace Wingard. The appellant inquired as to whether he was compelled to go with them, at which time Lusky told him that he was not, and appellant promptly refused to accompany them to the Police Department to be fingerprinted.
Mr. Lusky testified that:
“At this point I noticed that he had a tattoo, the tattoo with the name Rita which was listed on the identification order for Wingard. At this point I was convinced that this was Wingard and I arrested him as Horace Asbury Wingard, III.
“Q Mr. Lusky, prior to this arrest, prior to telling him that he was under arrest, was he in any custody of any kind ?
“A No, sir.
“Q Was he held by any of these men with you?
“A No, sir.
“Q He was not handcuffed?
“A No, sir.
“Q And this was on the street?
“A Yes, sir.
“Q All right, sir. Now, what if anything did you tell him at the point you told him he was under arrest ?
“A Well, immediately upon arrest, they advised him of the crime for which he was being arrested, the fact that it was the federal charge of unlawful flight from the State of Florida to avoid prosecution for the crimes of murder and escape. I told him at the time that he was not required to say anything, that he wouldn’t be forced to say anything, no threats or promises would be made to him, anything he did say could be used against him in a court of law. He was advised that he was free to consult an attorney at that time and that if he couldn’t afford one, one would be obtained for him free of charge before he had to say anything.
“I also explained to Mr. Wingard that I had no knowledge of the State charge for which — on which the federal process had been obtained in Florida.”
The appellant was then taken by car to jail, which trip took approximately thirty minutes. It was during this thirty-minute ride that the statements in question were given by the appellant.
The appellant’s version of the circumstances as testified to by Mr. Lusky admittedly was quite contrary. However, the trial judge has the duty to resolve conflicts and did resolve the conflicts in this instance in favor of Lusky’s version, and against that of the appellant.
The Supreme Court of the United States in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, stated:
“The constitutional issue we decide in: each of these cases is the admissibility of statements obtained from a defendant questioned while in custody or otherwise deprived of his freedom of action in any significant way,” (Emphasis supplied.)
The court went on to hold that if a defendant was not given a full and effective warning of his rights at the outset of the interrogation process, the statements obtained would not be admissible.
The question involved in. this appeal is whether or not the appellant was advised of his rights at the proper juncture so as to’ make his subsequent statements admissible.
From Mr. Lusky’s testimony it is readily apparent that as soon as he identi *265 fied the appellant as the person wanted for a crime, he was arrested and immediately-advised as to his constitutional rights. Up until that point the appellant was neither in custody nor deprived of his freedom of action in any significant way.
Therefore, the test as to the admissibility of the statements as laid down in Miranda were met and the trial court was correct in submitting such statements to the jury.
Moreover, from the reading of Mr. Lus-ky’s testimony as to the facts surrounding the giving of the statements during the thirty-minute ride to the j ail, it is apparent that the appellant volunteered said statements on his own behalf without being interrogated by any law enforcement officer.
The other points raised on appeal have been considered and found to be without merit, therefore, the judgment and sentence appealed is affirmed.
LILES, C. J., and ALLEN, J., concur.